# IN THE UNITED STATES BANKRUPTCY COURT
## THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 22-00251-jw |
| Richard Michael Cionco | Chapter 13 |
| | NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY |
| Debtor | 11 U.S.C. §362 |

TO:     DEBTOR(S), DEBTOR'S ATTORNEY, TRUSTEE, AND THOSE NAMED IN THE ATTACHED MOTION:

PLEASE TAKE NOTICE THAT A HEARING will be held on the attached Motion on:

| | |
|---|---|
| Date: | Wednesday, May 18, 2022 |
| Time: | 10:00 AM |
| Place: | U.S. Bankruptcy Courthouse |
| | 145 King Street, Room 225 |
| | Charleston, SC 29401 |

   Within fourteen (14) days after services of the attached Motion, and the Notice of Motion accompanied by the movant's Certification of Facts, and a blank Certification of Facts form, any party objecting to the relief sought shall:

(1)     File with the Clerk of this Court a written objection to the 11 U.S.C. 362 Motion;

(2)     File with the Clerk of this Court a Certification of Facts;

(3)     Serve on the movant items 1 & 2 above at the address shown below; and

(4)     File a certificate of such service with the Clerk of this Court.

   Should you fail to comply with this procedure you may be denied the opportunity to appear and be heard on this proceeding before the Court.

   /s/ Jason M Hunter

ATTORNEY: T. Lowndes Pope (I.D. 6079)
          Jason M. Hunter (I.D. 12999)

MOVANT: U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust

ATTORNEY'S ADDRESS:   P.O. Box 11412

April 22, 2022

Columbia, SC 29211

## IN THE UNITED STATES BANKRUPTCY COURT
## THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

IN RE:

Richard Michael Cionco

Debtor

CASE NO.: 22-00251-jw
Chapter 13

MOTION TO LIFT STAY

TO:    DEBTOR(S), DEBTOR'S ATTORNEY, TRUSTEE, AND THOSE NAMED IN THE MOTION:

YOU WILL PLEASE TAKE NOTICE that the undersigned will appear before the Court fourteen (14) days after service of this notice upon you, or as soon as thereafter as this matter may be heard, requesting that this Court lift the stay to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E ("Movant") for the following reasons:

1.    The Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code on February 2, 2022, James M. Wyman was appointed Trustee.

2.    The real property which is the subject of this Motion is briefly described as:

2116 Blakers Boulevard, Bluffton, SC 29909
TMS No. R614 028 000 2663 0000

3.    Movant is the holder of a secured claim against the Debtor evidenced by a Mortgage, copy of which is attached hereto. The property covered by the Mortgage is more fully described therein. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

4.      Debtor has failed to make a payment since the filing of this latest bankruptcy.

5.      Debtor's account remains due for the November 2019 to April 2022 payments in the amount of $1,157.27 each. The total amount now past due is $34,718.10. Also due is $188.00 filing fee in Bankruptcy Court and $1,050.00 attorney's fees for this action, making a total due of $35,956.10. Movant, therefore, has not been provided adequate protection for its interest in the property and is suffering irreparable harm and injury. (*See* Exhibits '<u>A</u>').

6.      On December 18, 2018, Movant filed pleadings for a state-court action for foreclosure to exercise its rights in the subject property. (*See* Civil Action No. 2018-CP-07-02470).

7.      Judgment was granted for Movant in said foreclosure action on June 15, 2021, and a judicial sale of the subject property was set for September 7, 2021. (*See* Exhibits '<u>B</u>' & '<u>C</u>').

8.      Said judicial sale was forestalled by Debtor's pro se filing of bankruptcy under Chapter 13 on August 31, 2021. (*See* Bankruptcy Petition # 21-02263-jw).

9.      Said bankruptcy case was dismissed for non-compliance on November 18, 2021, with the Debtor having made no payments to the trustee. (*See* Exhibits '<u>D</u>' & '<u>E</u>').

10.     Following said dismissal, an Order to Proceed was entered in the state-court foreclosure action on December 14, 2021.

11.     A subsequent judicial sale of the subject property was then set for February 7, 2022. . (*See* Exhibits '<u>F</u>').

12.     Said judicial sale was forestalled by Debtor's pro se filing of the present bankruptcy action under Chapter 13 on February 2, 2022.

13.     Movant is informed and believes that the Debtor has not handled this obligation in good faith and that this Court should issue its Order lifting the stay as to the security of Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E so that appropriate procedures may begin to protect the interest of the Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E.

14.     The Movant agrees to waive any claim that may arise under 11 U.S.C. § 503(b) or § 507(b) as a result of this Order.  The Creditor further agrees that any funds realized from the liquidation of its collateral, in excess of all liens, costs and expenses, shall be paid to the Trustee.

15.     Relief from the stay for all purposes allowed by the Note, Mortgage, and applicable law, including, but not limited to, allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property. In addition to foreclosure, relief from stay permits activity necessary to obtain possession of said collateral. Therefore, Movant is permitted to engage in loss mitigation activity, including short payoff, short sale, and the obtaining of a deed in lieu of foreclosure, including authorization to negotiate inferior liens.  Movant is further permitted to send information regarding these loss mitigation options directly to the debtor. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

16.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

17.     That Movant be entitled to recover its reasonable fees and expenses incurred in connection with seeking the relief requested in this Motion.

18.     That such other relief as the Court deems proper.

WHEREFORE, pursuant to 11 U.S.C. § 362(d)(1), Movant hereby moves for an Order modifying the automatic stay to permit actions in State Court against the subject property.

RILEY, POPE & LANEY, LLC

/s/ Jason M. Hunter
T. Lowndes Pope (ID 6079)
Jason M. Hunter (ID 12999)
Riley, Pope & Laney, LLC
Post Office Box 11412
Columbia, SC 29211
803-799-9993
803-239-1414 (fax)

Columbia, South Carolina
April 22, 2022

IN THE UNITED STATES BANKRUPTCY COURT
THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

IN RE:

Richard Michael Cionco

              Debtor,

CASE NO.: 22-00251-jw
Chapter 13

CERTIFICATION OF FACTS

In the above entitled proceeding, in which relief is sought by Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E ("Movant") from the automatic stay provided by 11 U.S.C. § 362, I hereby certify to the best of my knowledge the following:

1.    <u>Nature of Movant's Interest:</u>

Movant is the current holder of the Mortgage.

2.    <u>Brief Description of Security Interests, copy attached in applicable:</u>

True and correct copies of the Note and Mortgage are attached hereto as Exhibits G and H, respectively, and incorporated herein by reference. A true and correct copy of the assignment agreement with respect to the Note and Mortgage is attached hereto as Exhibit I and incorporated herein by reference.

3.    <u>Description of Property Encumbered by Stay (include serial number, lot and block number, etc.).</u>

2116 Blakers Boulevard, Bluffton, SC 29909

4.    <u>Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.; include applicable subsection of Section 362):</u>

11 U.S.C. § 362(d)(1); account is in delinquent status

5.    <u>Prior Adjudication by Other courts, copy attached (Decree of Foreclosure, Order for Possession, Levy of Execution, etc., if applicable):</u>

Not Applicable

6.    <u>Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.):</u>

Fair Market Value                                $    <u>$212,000.00</u>

Liens (Mortgage):                              $    <u>$342,955.45</u>

Net Equity:                                        $    <u>-$130,955.45</u>

Source/Basis of Value:                  Per Debtor's Schedule A

7.    <u>Amount of Debtor Estimated Equity (using figures from paragraph 6, supra):</u>

       -$130,955.45

8.    <u>Month and Year in Which First Direct Post-petition Payment Came Due to Movant</u>

       <u>(if applicable):</u>

       November 2019

9.    (a)    <u>For Movant/Lien Holder: List all post-petition payments received by lien</u>

       <u>holder; date and amount of last payment received; and month for which last</u>

       <u>payment was applied.</u>

       See attached Exhibit A

       (b)    <u>For Objecting Party (if applicable): List or attach a list of all post-petition</u>

       <u>payments included in the Movant's list from (a) above which objecting party</u>

       <u>disputes as having been made.  Attach written proof of such payment(s) or a</u>

       <u>statement as to why such proof is not available at the time of filing this objection.</u>

       Not Applicable

10.    <u>Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date</u>

       <u>of this Motion.</u>

       February 2022

RILEY, POPE & LANEY, LLC

/s/ Jason M. Hunter
T. Lowndes Pope (ID 6079)
Jason M. Hunter (ID 12999)
Riley, Pope & Laney, LLC
Post Office Box 11412
Columbia, SC 29211
803-799-9993
803-239-1414 (fax)

Columbia, South Carolina

April 22, 2022

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

IN RE:

Richard Michael Cionco

                                    DEBTOR,

CASE NO.: 22-00251-jw
Chapter 13

CERTIFICATE OF SERVICE

This is to certify that I, Kelly Ting, an employee with the law firm of Riley Pope & Laney, LLC, have this day caused to be served upon the person named below the attached NOTICE OF MOTION, MOTION TO LIFT STAY and CERTIFICATION OF FACTS in the above-captioned matter on April 22, 2022 via United States mail, first-class postage prepaid, to the following individuals:

Richard Michael Cionci
2116 Blakers Blvd
Bluffton, SC 29909

James M. Wyman, Trustee (via electronic service)
Post Office Box 997
Mt. Pleasant, SC 29465

                              /s/ Kelly Ting                              
                              Riley, Pope & Laney, LLC
                              Kelly Ting, Bankruptcy Paralegal
                              Post Office Box 11412
                              Columbia, SC 29211
                              803-799-9993
                              803-239-1414 (fax)

Columbia, South Carolina
April 22, 2022

**Report Payment History:** ███████

| DateReceived | DateDue | DayVariance | Reference | ISACH | Code | TotalAmount | ToInterest | ToPrincipal | LateCharge | ToLateCharge | ToReserve | ToImpound | ToPrepay | ToChargesPrincipal | ToChargesInterest | ToBrokerFee | ToLenderFee | ToOtherTaxable | ToOtherTaxFree | ToOtherPayments | ToUnpaidInterest | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/14/2019 | 10/01/2019 | 44 | 339 | | RegPmt | $1,157.27 | $998.03 | $159.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 10/01/2019 | 09/01/2019 | 30 | 337 | | RegPmt | $1,157.27 | $998.69 | $158.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 09/03/2019 | 08/01/2019 | 33 | 334 | | RegPmt | $1,157.27 | $999.34 | $157.93 | $46.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/28/2019 | 07/01/2019 | -3 | TRUST | | RegPmt | $0.00 | $1,000.00 | $157.27 | $0.00 | $0.00 | ($1,157.27) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/28/2019 | 06/28/2019 | 0 | 48933230 | | OtherCash | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/28/2019 | 06/28/2019 | 0 | 48933240 | | OtherCash | $157.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $157.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2019 | 06/01/2019 | 0 | | | Adj-PB | $53,669.17 | $0.00 | $53,669.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2019 | 06/01/2019 | 0 | | | Adj-PBRev | $0.00 | $0.00 | ($53,669.17) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2019 | 06/01/2019 | 0 | | | Adj-PBRev | $0.00 | $0.00 | ($53,669.17) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2019 | 06/01/2019 | 0 | | | Adj-PB | $53,669.17 | $0.00 | $53,669.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 05/01/2018 | 05/01/2018 | 0 | BOARD | | Adj-PBRev | $0.00 | $0.00 | ($26,270.28) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | DEFERRED |
| 05/01/2018 | 05/01/2018 | 0 | BOARD | | Adj-PB | $26,270.28 | $0.00 | $26,270.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | DEFERRED |
| **Totals for** | | **13 Record(s):** | | | | **$58,298.25** | **$3,996.06** | **$54,302.19** | **$46.29** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | |



**FCI Lender Services, Inc.**

Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website : www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 28720 Anaheim CA 92809-0157    Fax: (714) 282-5775

Report Date: 04/20/2022

## Unverified Loan Reinstatement

| | |
|---|---|
| **Company:** | FCI Lender Services, Inc. |
| | PO Box 28720 |
| | Anaheim CA 92809-0157 |
| | 800-931-2424 |
| **Borrower:** | RICHARD CIONCI |
| | 2116 Blakers Boulevard |
| | Bluffton SC 29909 |

**Summary:**

| Loan Account: | |
|---|---|
| Unpaid Installments : | $34,718.10 |
| Unpaid Interest : | $0.00 |
| Unpaid Late Charges : | $46.29 |
| Unpaid Charges : | $19,217.73 |
| Unpaid Fees : | $0.00 |
| Others Fees: | $0.00 |
| Accrued Late Charges: | $1,342.41 |
| Reserve Balance: | $0.00 |
| **To Bring Loan Current as of 04/20/2022, Please Pay:** | **$55,324.53** |

**PLEASE BE ADVISED** that FCI Lender Services is the loan servicer only and does not have any ownership interest in this loan. This form is intended to provide only an estimate of the amount needed to bring your loan current. Neither the lender nor FCI have verified the information set forth herein, and it may not include all costs, fees, default interest, and other charges as may be applicable. All verified amounts must be approved by both FCI and the lender before any party to the loan may rely on the accuracy of the information.

| Payment Due Date | Note Rate | Payment Amount | Apply To : | | | | | | | Unpaid Int. Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Principal | Interest | Reserve | Impound | Other | Unp. Int | Acc. Late Chg | | |
| | | | | | | | | Balance Forward: | | $0.00 | $239,366.98 |
| 11/01/2019 | 5.0000% | $1,157.27 | $159.91 | $997.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $239,207.07 |
| 12/01/2019 | 5.0000% | $1,157.27 | $160.57 | $996.70 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $239,046.50 |
| 01/01/2020 | 5.0000% | $1,157.27 | $161.24 | $996.03 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,885.26 |
| 02/01/2020 | 5.0000% | $1,157.27 | $161.91 | $995.36 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,723.35 |
| 03/01/2020 | 5.0000% | $1,157.27 | $162.59 | $994.68 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,560.76 |
| 04/01/2020 | 5.0000% | $1,157.27 | $163.27 | $994.00 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,397.49 |
| 05/01/2020 | 5.0000% | $1,157.27 | $163.95 | $993.32 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,233.54 |
| 06/01/2020 | 5.0000% | $1,157.27 | $164.63 | $992.64 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $238,068.91 |
| 07/01/2020 | 5.0000% | $1,157.27 | $165.32 | $991.95 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,903.59 |
| 08/01/2020 | 5.0000% | $1,157.27 | $166.01 | $991.26 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,737.58 |
| 09/01/2020 | 5.0000% | $1,157.27 | $166.70 | $990.57 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,570.88 |
| 10/01/2020 | 5.0000% | $1,157.27 | $167.39 | $989.88 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,403.49 |
| 11/01/2020 | 5.0000% | $1,157.27 | $168.09 | $989.18 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,235.40 |
| 12/01/2020 | 5.0000% | $1,157.27 | $168.79 | $988.48 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $237,066.61 |
| 01/01/2021 | 5.0000% | $1,157.27 | $169.49 | $987.78 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,897.12 |
| 02/01/2021 | 5.0000% | $1,157.27 | $170.20 | $987.07 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,726.92 |
| 03/01/2021 | 5.0000% | $1,157.27 | $170.91 | $986.36 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,556.01 |
| 04/01/2021 | 5.0000% | $1,157.27 | $171.62 | $985.65 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,384.39 |
| 05/01/2021 | 5.0000% | $1,157.27 | $172.34 | $984.93 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,212.05 |
| 06/01/2021 | 5.0000% | $1,157.27 | $173.05 | $984.22 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $236,039.00 |
| 07/01/2021 | 5.0000% | $1,157.27 | $173.77 | $983.50 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $235,865.23 |
| 08/01/2021 | 5.0000% | $1,157.27 | $174.50 | $982.77 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $235,690.73 |
| 09/01/2021 | 5.0000% | $1,157.27 | $175.23 | $982.04 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $235,515.50 |
| 10/01/2021 | 5.0000% | $1,157.27 | $175.96 | $981.31 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $235,339.54 |
| 11/01/2021 | 5.0000% | $1,157.27 | $176.69 | $980.58 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $235,162.85 |
| 12/01/2021 | 5.0000% | $1,157.27 | $177.42 | $979.85 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $234,985.43 |
| 01/01/2022 | 5.0000% | $1,157.27 | $178.16 | $979.11 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $234,807.27 |
| 02/01/2022 | 5.0000% | $1,157.27 | $178.91 | $978.36 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $234,628.36 |
| 03/01/2022 | 5.0000% | $1,157.27 | $179.65 | $977.62 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $234,448.71 |
| 04/01/2022 | 5.0000% | $1,157.27 | $180.40 | $976.87 | $0.00 | $0.00 | $0.00 | $0.00 | $46.29 | $0.00 | $234,268.31 |
| | | **$34,718.10** | **$5,098.67** | **$29,619.43** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$1,342.41** | | |

**Attention:** Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure. FCI does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

**Unpaid Late Charges Apply To:**

| Date Due | Date Received | Days Late | Reference | Late Charge Amount | Amount Paid | Late Charge Due |
|---|---|---|---|---|---|---|
| 08/01/2019 | 09/03/2019 | 33 | 334 | $46.29 | $0.00 | $46.29 |
| | | | | | | **$46.29** |

Attention: Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure.
FCI does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

**Itemization of Unpaid Charges**

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|--------------:|---------------:|-----------------:|----------:|
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $350.00 | $0.00 | $350.00 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $337.50 | $0.00 | $337.50 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $225.00 | $0.00 | $225.00 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $1,407.36 | $0.00 | $1,407.36 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $1,575.00 | $0.00 | $1,575.00 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $91.89 | $0.00 | $91.89 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $184.15 | $0.00 | $184.15 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $98.45 | $0.00 | $98.45 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $98.45 | $0.00 | $98.45 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $210.04 | $0.00 | $210.04 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $109.85 | $0.00 | $109.85 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Tax Payment Advance | 0.000% | $1,476.52 | $0.00 | $1,476.52 |
| 01/11/2021 | Tax Payment Advance | 0.000% | $1,390.41 | $0.00 | $1,390.41 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,594.24 | $0.00 | $1,594.24 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,203.24 | $0.00 | $1,203.24 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,664.09 | $0.00 | $1,664.09 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,541.00 | $0.00 | $1,541.00 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $90.46 | $0.00 | $90.46 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $500.00 | $0.00 | $500.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $350.00 | $0.00 | $350.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $96.00 | $0.00 | $96.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $117.50 | $0.00 | $117.50 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $1,017.62 | $0.00 | $1,017.62 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $122.77 | $0.00 | $122.77 |

**Attention:** Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure. FCI does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

| 03/11/2022 | Lender Placed Insurance | 0.000% | $174.46 | $0.00 | $174.46 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Tax Payment Advance | 0.000% | $1,387.98 | $0.00 | $1,387.98 |
| | | | | | $19,217.73 |

| Property List |
| --- |
| 2116 Blakers Boulevard,SC,29909 |

| Itemization of Other Fees | |
| --- | --- |
| Description | Amount |
| | |
| | |

Attention: Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure.
FCI does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.



**FCI Lender Services, Inc.**
Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website : www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 28720 Anaheim CA 92809-0157    Fax: (714) 282-5775

Statement Date: 04/20/2022

# Demand Loan Payoff

| Borrower | | Servicer | |
|---|---|---|---|
| | RICHARD CIONCI | | FCI Lender Services, Inc. |
| | 2116 Blakers Boulevard | | 8180 E Kaiser Blvd, |
| | Bluffton SC 29909 | | Anaheim, CA 92808-2277 |
| | Account: ▉▉▉▉ | | 800-931-2424 |

| **Payoff date : 04/20/2022** | |
|---|---|
| Maturity Date : | 06/01/2059 |
| Next Payment Due : | 11/01/2019 |
| Interest Rate : | 5.0000% |
| Current Rate : | 5.0000% |
| Interest Paid to Date : | 10/01/2019 |
| | |
| Unpaid Principal : | $239,366.98 |
| Deferred Unpaid Principal : | $53,669.17 |
| Accru. Int. Balance from 10/01/2019-04/20/2022 : | $30,560.28 |
| Unpaid Interest : | $0.00 |
| Deferred Unpaid Interest : | $0.00 |
| Unpaid Fees: | $0.00 |
| Acc. Late Charges(Calculated through Payoff Date): | $0.00 |
| Unpaid Late Charges : | $46.29 |
| Deferred Unpaid Late Charges : | $0.00 |
| Unpaid Charges: | $19,217.73 |
| Other Fees: | $95.00 |
| Reserve Balance: | $0.00 |
| Escrow Balance: | $0.00 |
| Prepayment Penalty : | $0.00 |
| Principal Credit : | $0.00 |
| Interest Credit : | $0.00 |
| Unpaid Charges Credit : | $0.00 |
| Late Charges Credit : | $0.00 |
| Impound Credit : | $0.00 |
| Prepay Credit : | $0.00 |
| Unpaid Fees Credit : | $0.00 |
| **Estimated Amount to Fully Pay Off this Loan:** | $342,955.45 |
| | |
| Daily Interest Amount If Paying to: 4/20/2022 | $32.79 |

PLEASE BE ADVISED THAT THIS DEMAND IS ONLY AN ESTIMATE. Additional interest, late charges, fees, and costs may be incurred by the Borrower between the Statement Date and the Payoff Date. ACCORDINGLY, PLEASE CALL (800) 931-2424 ext. 651 TO VERIFY THE PAYOFF AMOUNT PRIOR TO ISSUING PAYMENT. As required by state law, upon receipt of payment in FULL, FCI will process the release of lien, unless directed otherwise by lender.

**(1) Only Certified Funds or Wire Transfer will be accepted for Immediate Payoff.**
**(2)** Please make your disbursement payable to: FCI Lender Services, Inc.
**(3)** We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.
**(4)** PLEASE NOTE THIS DEMAND EXPIRES AND BECOMES NULL AND VOID ON 4/20/2022, as follows: (A) for Payment by Wire, at 2:00 p.m. PT; and (B) for Payment by Certified Funds, at 5:00 p.m. PT.
**(5) THE DEMAND FEE IS DUE EVEN IF YOUR TRANSACTION IS CANCELLED.**

Sincerely,

## DRAFT REPORTS

DRAFT REPORTS
FCI Lender Services, Inc.

Attention: Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure.
FCI Lender Services, Inc. does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int. | Acc Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/2019 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 12/01/2019 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 01/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 02/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 03/01/2020 | 5.0000% | $ 950.91 | $ 0.00 | $ 950.91 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 04/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 05/01/2020 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 06/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 07/01/2020 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 08/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 09/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 10/01/2020 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 11/01/2020 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 12/01/2020 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 01/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 02/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 03/01/2021 | 5.0000% | $ 918.12 | $ 0.00 | $ 918.12 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 04/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 05/01/2021 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 06/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 07/01/2021 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 08/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 09/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 10/01/2021 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 11/01/2021 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 12/01/2021 | 5.0000% | $ 983.70 | $ 0.00 | $ 983.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 01/01/2022 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 02/01/2022 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 03/01/2022 | 5.0000% | $ 918.12 | $ 0.00 | $ 918.12 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 04/01/2022 | 5.0000% | $ 1,016.49 | $ 0.00 | $ 1,016.49 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| 04/20/2022 | 5.0000% | $ 623.01 | $ 0.00 | $ 623.01 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 239,366.98 |
| | | $ 30,560.28 | $ 0.00 | $ 30,560.28 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | | |

| Itemization of Unpaid Charges | | | | | |
|---|---|---|---|---|---|
| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $350.00 | $0.00 | $350.00 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $337.50 | $0.00 | $337.50 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $225.00 | $0.00 | $225.00 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $1,407.36 | $0.00 | $1,407.36 |
| 01/11/2021 | Foreclosure Attorney Fees | 0.000% | $1,575.00 | $0.00 | $1,575.00 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $91.89 | $0.00 | $91.89 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $184.15 | $0.00 | $184.15 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $98.45 | $0.00 | $98.45 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $98.45 | $0.00 | $98.45 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $101.74 | $0.00 | $101.74 |
| 01/11/2021 | Lender Placed Insurance | 0.000% | $210.04 | $0.00 | $210.04 |

**Attention:** Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure.
FCI Lender Services, Inc. does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

| Date | Description | Rate | Amount | | Total |
|------|-------------|------|--------|---|-------|
| 01/11/2021 | Lender Placed Insurance | 0.000% | $109.85 | $0.00 | $109.85 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 01/11/2021 | Tax Payment Advance | 0.000% | $1,476.52 | $0.00 | $1,476.52 |
| 01/11/2021 | Tax Payment Advance | 0.000% | $1,390.41 | $0.00 | $1,390.41 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,594.24 | $0.00 | $1,594.24 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,203.24 | $0.00 | $1,203.24 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,664.09 | $0.00 | $1,664.09 |
| 10/27/2021 | Attorney Fees | 0.000% | $1,541.00 | $0.00 | $1,541.00 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $90.46 | $0.00 | $90.46 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 10/27/2021 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $500.00 | $0.00 | $500.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $350.00 | $0.00 | $350.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $96.00 | $0.00 | $96.00 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $117.50 | $0.00 | $117.50 |
| 03/11/2022 | Bankruptcy Attorney Fees | 0.000% | $1,017.62 | $0.00 | $1,017.62 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $96.92 | $0.00 | $96.92 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $122.77 | $0.00 | $122.77 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $174.46 | $0.00 | $174.46 |
| 03/11/2022 | Lender Placed Insurance | 0.000% | $100.15 | $0.00 | $100.15 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Property Preservation Costs | 0.000% | $15.50 | $0.00 | $15.50 |
| 03/11/2022 | Tax Payment Advance | 0.000% | $1,387.98 | $0.00 | $1,387.98 |
| | | | | | **$19,217.73** |

| Property List |
|---------------|
| 2116 Blakers Boulevard, Bluffton SC 29909 |

| Itemization of Other Fees | |
|---------------------------|--------|
| **Description** | **Amount** |
| Demand Fee | $30.00 |
| Reconveyance Fee | $65.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| | $95.00 |

**Attention:** Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure.
FCI Lender Services, Inc. does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details.

FCI Lender Services, Inc. * PO Box 28720 * Anaheim * CA 92809-0157 * NMLS#4920 * DRE # ███████ * www.myfci.com

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BEAUFORT | C/A NO.: 2018-CP-07-02470 |

|  |  |
|---|---|
| Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E, | **MASTER IN EQUITY'S ORDER OF JUDGMENT OF FORECLOSURE AND SALE DECREE** |
| Plaintiff, | (Non-Jury) |
| vs. | (Deficiency Waived) |
| Richard Cionci, Mill Creek Owner's Association, Inc., | |
| Defendant. | |

(File No. 4069.00221)

| | |
|---|---|
| RILEY POPE & LANEY, LLC<br>Attorneys for Plaintiff | Richard Cionci<br>*Pro Se* |
| | Meredith Bannon<br>Attorney for Mill Creek Owner's Association, Inc. |

Pursuant to Rule 53 SCRCP, the above entitled matter was referred to the undersigned to make appropriate findings of fact and conclusions of law with authority to enter a final judgment in this cause without further order of court. Any appeal from this Order shall be directly to the South Carolina Court of Appeals.

Pursuant to said Order of Reference a hearing was held on April 16, 2021 to address Plaintiff's Motion for Summary Judgment. The hearing was attended by attorneys for the Plaintiff and Defendant Mill Creek Owner's Association, Inc. Plaintiff, who is proceeding *pro se*, was also present.

## **STANDARD**

Summary Judgment is warranted only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party." Bloom v. Ravoira, 339 S.C. 417, 529 S.E.2d 710 (2000). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. However, once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

support for the opponent's case, the opponent must come forward with specific facts showing there is a genuine issue for trial." *Garvin v. Bi-Lo, Inc.*, 337 S.C. 436, 523 S.E.2d 481 (Ct. App. 1999). The opponent cannot merely rely upon the pleadings, but must submit some additional evidence creating a genuine issue of material fact.

"Generally, the party seeking foreclosure has the burden of establishing the existence of the debt and the mortgagor's default on that debt. Once the debt and default have been established, the mortgagor has the burden of establishing a defense to foreclosure such as lack of consideration, payment, or accord and satisfaction." *U.S. Bank Trust Nat. Ass'n v. Bell*, 385 S.C. 364, 374-75, 684 S.E.2d 199, 205 (Ct.App.2009) (internal citations omitted).

<u>ARGUMENTS AND EVIDENCE PRESENTED</u>

On March 11, 2021, Plaintiff's counsel filed and served a Motion for Summary Judgment with a supporting affidavit and exhibits. The affidavit and exhibits allege Defendant Cionci entered into a loan agreement with DHI Mortgage Company, Ltd. on or about September 29, 2009. Defendant Cionci executed a Note in the amount of One Hundred Ninety-Nine Thousand Four Hundred Thirty and 00/100 ($199,430.00) Dollars and he executed a Mortgage as additional security for the loan. The Note and Mortgage allegedly were assigned to Plaintiff.

The affidavit alleges Defendant Cionci defaulted on the terms of the Note on or about October 1, 2019, and Plaintiff has declared the entire balance of the loan due and payable.

In opposition to Plaintiff's motion, Defendant Cionci filed affidavits and opposition memoranda arguing a genuine issue of material fact exists and summary judgment should be denied. The main point of Defendant Cionci's argument is the loan was originally federally backed and he argues the prior servicer/lender failed to complete loss mitigation prior to filing the foreclosure action as required by federal law.

In response, Plaintiff filed and served a counter-affidavit stating that at all time relevant to the present action, the Note and Mortgage were no owned, securitized, guaranteed, or insured by the FHA as evidenced by a document confirming such provided by the U.S. Department of Housing and Urban Development.

The Court adjourned the April 16th hearing to allow the parties to review and reply with any additional arguments.

On April 23, 2021, Defendant Cionci filed a supplemental opposition memorandum arguing there were genuine facts of equitable estopped to prevent summary judgment. However,

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

the basis for the argument again relies an acts by prior servicers/lenders that took place *before* the present action was filed on behalf of Plaintiff.[1]  Defendant Cionci did to present any evidence to show Plaintiff is not the current owner of the loan, that the loan is owned, securitized, guaranteed, or insured by the FHA or any other government backed lender, or any evidence contradicting Plaintiff's argument that Defendant Cionci entered into a loan modification with Plaintiff on June 21, 2019, and breached the terms of that agreement.

Based upon the proof made of the facts and circumstances alleged in the pleadings and through the affidavits in support of summary judgment, I find, conclude and order as follows:

<u>FINDINGS OF FACT:</u>

1) The Lis Pendens was filed on December 18, 2018.

2) The Summons and Complaint were filed on December 18, 2018.

3) Service was made upon the Defendant as shown by the proof of service filed herein.

4) The Defendant and all attorneys of record were notified of the time, date, and place of the hearing in this matter.

5) For value received, Richard Cionci made, executed and delivered a note ("Note") dated September 29, 2009, promising thereby to pay to the order of DHI Mortgage Company, Ltd. the sum of One Hundred Ninety Nine Thousand Four Hundred Thirty and 00/100 ($199,430.00) Dollars, with interest at the rate of 5.125% per annum initially, with a current rate of 4.0000% per annum.  Other terms and conditions are stated in the Note, which is of record herein.

6) To better secure the payment of the Note described above, Richard Cionci made, executed, and delivered to Mortgage Electronic Registration Systems, Inc. as nominee for DHI Mortgage Company, Ltd. a certain real estate mortgage ("Mortgage") in writing, dated September 29, 2009, covering real property in Beaufort County, which is the same as that described in the Complaint.  The Mortgage was filed in the Office of the Register of Mesne Conveyances/Register of Deeds for Beaufort County on October 2, 2009, in Book 2894 at Page 1373.  Thereafter, by assignment recorded on June 28, 2011 in Book 3068 at Page 604, the mortgage was assigned to Wells Fargo Bank, NA; thereafter, by assignment recorded on August 25, 2017 in Book 3602 at

---

[1] Defendant Cionci also submitted an opposition memorandum arguing Plaintiff's affidavit should not be considered because the affiant does not have any personal knowledge of the allegations that occurred prior to Plaintiff's ownership of the loan.  While this argument may go to the weight of the evidence, the affidavit complies with the requirements of Rule 803(6), SCRE, and, therefore is admissible for the purposes of this motion.

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

Page 151, the mortgage was assigned to The Secretary of Housing and Urban Development; thereafter, by assignment recorded on August 25, 2017 in Book 3602 at Page 154, the mortgage was assigned to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A; thereafter, by assignment recorded on May 10, 2019 in Book 3758 at Page 2718, the mortgage was assigned to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C; thereafter, by assignment recorded on January 15, 2021 in Book 3959 at Page 1849, the mortgage was assigned to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E.

7)    The Mortgage evidences and secures the repayment of money advanced by the mortgagee to, or on behalf of, the mortgagor and constitutes a first mortgage lien on the mortgaged premises.

8)    The Plaintiff is the real party in interest pursuant to SCRCP 17(a) and is entitled to enforce the terms of the subject Note and Mortgage.

9)    The titleholder of record of the subject property as of the filing of the Lis Pendens in this action is Richard Cionci, who is the original mortgagor.

10)    Any notice required by the terms of the Note and/or Mortgage or by state or federal statutes has been given to the applicable Defendant prior to the commencement of this action.

11)    The loan evidenced by the Note and Mortgage is not owned, securitized or guaranteed by Fannie Mae or Freddie Mac, and is not serviced by a servicer participating in the Home Affordable Modification Program (HAMP).  Therefore the Court finds that there are no HAMP or other issues concerning federal requirements for loss mitigation to be resolved before foreclosure is ordered or the sale is commenced.

12)    An Attorney Certification having been filed in this matter pursuant to Administrative Order 2011-05-02-01, the Court finds that the foreclosure action may proceed to Judgment and Sale.

13)    The Note payments which became due on October 1, 2019, and subsequent months, have not been made as provided for therein, and the Plaintiff, as the holder thereof, has elected to require immediate payment of the entire amount due thereon and has placed the Note and Mortgage in the hands of its attorney for collection by foreclosure.

14)    The sum of $2,738.00 is a reasonable fee to allow as attorney's fees for Plaintiff's attorney for services performed and anticipated to be performed until final adjudication of this

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

action, under the terms of the Note and Mortgage.  The inclusion of services anticipated to be performed until final adjudication contemplates completion of this matter within a reasonable time and does not include exceptional circumstances delaying conclusion beyond the normal time.

15)    The amount due and owing on the Note, with interest at the rate provided in the Note, and other costs and expenses of the within action, including an attorney's fee, secured by the Note and Mortgage, is as follows:

| | |
|---|---|
| (a) Principal amount due as of October 1, 2019 | $239,366.98 |
| (b) Interest from October 1, 2019 to February 18, 2021 at a current rate of 4.0000% | $16,591.74 |
| (c) Deferred Interest | $53,669.17 |
| (d) Additional Per Diem Interest from February 19, 2021 - April 26, 2021 | $2,196.93 |
| (e) Advances | |
|    Unpaid Loan Charges of Advances | $8,242.56 |
|    Estimated Payoff Charges from Servicer | $105.00 |
| (f) Late charges | $740.64 |
| (g)  Costs of collection prior to hearing (service of process, filing fees, etc.) | $545.72 |
| (h)  Attorneys Fee | $2,738.00 |
| **Total debt secured by Note and Mortgage, including interest to date shown** | **$324,196.74** |

Interest for the period from the date shown in (b) above through the date of this judgment at above stated rate to be added to the above stated "Total Debt" to comprise the amount of the judgment debt entered herein and interest after the date of judgment at the rate of 4.0000% per annum (pursuant to the terms of the Note and Mortgage) on the judgment debt should be added to such judgment debt to comprise the amount of Plaintiff's debt secured by the Mortgage through the date to which such interest is computed.

16)    The Plaintiff is seeking the usual foreclosure of the mortgage and although deficiency was demanded in the Complaint, Plaintiff now wishes to waive the right to a personal or deficiency judgment pursuant to Rule 71(b) SCRCP.

17)    The following Defendant(s) claim(s) or may claim a lien upon or interest in the subject property or are otherwise involved in this matter. In the event there is a surplus from the sale of the subject property, the validity, priority and amount of such liens will be determined at a hearing subsequent to the sale, in accordance with Rule 71(c), SCRCP.   The Clerk of

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

Court/Register of Deeds is hereby ordered to release said liens in so much as it pertains to the property which is the subject of this action:

> *Mill Creek Owner's Association, Inc. by virtue of any lien or enforceable assessments claimed as provided for in the Declaration of Covenants, Conditions, and Restrictions recorded herein, and any amendments thereto; including but not limited to a lien in the amount of $1,325.32 recorded November 30, 2015 in Book 112 at Page 868; and a lien in the amount of $2,490.85 recorded October 11, 2011 in Book 73 at Page 93. Any such interest or lien upon the subject property is junior and subordinate to Plaintiff's mortgage.*

> *Mill Creek Owner's Association, Inc. by virtue of any lien or enforceable assessments claimed as provided for in the Declaration of Covenants, Conditions, and Restrictions recorded herein, and any amendments thereto; including but not limited to a lien in the amount of $5,278.30 recorded November 5, 2018 in Book 135 at Page 1216 and re-recorded on November 9, 2018 in Book 135 at Page 1398. Any such interest or lien upon the subject property is junior and subordinate to Plaintiff's mortgage.*

## CONCLUSIONS OF LAW

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1) The Plaintiff's Mortgage should be declared a first mortgage lien and Plaintiff should have judgment of foreclosure of the mortgage and the mortgaged property should be ordered sold at public auction after due advertisement.

2) The Court finds that there are no HAMP issues to be resolved before foreclosure is ordered or the sale is commenced.

3) The Court also finds the real property is not an "owner occupied dwelling" as defined in the May 2, 2011 Administrative Order, and is therefore exempt from said Order.

4) The Court also finds that Plaintiff filed a Certification of Compliance with the Coronavirus Aid, Relief, and Economic Security Act as required by the May 6, 2020 Administrative Order, and is therefore in compliance with said Order.

5) The Defendants named herein, and all persons whosoever claiming under Defendants, are forever barred and foreclosed of all right, title, interest, equity of redemption or lien in the said mortgaged premises so sold, or any part thereof.

6) Pursuant to Rule 53, SCRCP, this Order shall constitute a final judgment.

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

7)   That, in addition to all notices to the titleholder of record which are required by the SCRCP or other law, in a case involving the titleholder's SCRCP 55 default, or in any other case or circumstance where the titleholder would not ordinarily receive a copy of the Order of Foreclosure and/or the Notice of Sale, the Plaintiff shall, within five (5) business days of the execution of this Order cause this Order and the Notice of Sale (if available) to be served by U.S. Mail upon said titleholder.

8)   A Certification of such service shall be filed with the Clerk of Court expeditiously.

9)   In cases where the Notice of Sale is executed later in time than the Order, service shall be accomplished separately, and shall be sent no later than five (5) business days from receipt by the Plaintiff.

10) There is due to the Plaintiff on the Note and Mortgage set forth in the Complaint the sum of $324,196.74, as set out in the Findings of Fact *supra.*

11) The amount due in the preceding paragraph (the "Total Debt" as set out in the Findings of Fact *supra*, and later accrued interest on the principal), shall constitute the total judgment debt due Plaintiff and shall bear interest hereafter at the rate of 4.0000% per annum.  The amount of the judgment shall be subject to increase to permit the Plaintiff to recover additional costs, commissions and expenses not included in the judgment figures set forth herein.  It may also increase to include supplemental compensation for attorney's services not contemplated by the initial fee awarded.  Jurisdiction over the fee award and total debt is reserved to facilitate the assessment and payment of any such costs and/or supplemental compensation.  Such additional costs, commissions and expenses may be established by statement and shall be adjudicated by the Court without further finding.

12) The Defendant liable for the aforesaid judgment debt including interest at the rate of 4.0000% per annum shall on or before the date of sale of the property hereinafter described, pay to the Plaintiff, or Plaintiff's attorney the amount of Plaintiff's debt as aforesaid, together with the costs and disbursements of this action.

13) On default of payment at or before the time herein indicated, the mortgaged premises described in the Complaint, as hereinafter set forth, shall be sold by the Master in Equity, at public auction, at 11:00 a.m. at the County Courthouse in Beaufort, South Carolina, on some convenient sales day hereafter (and should the regular day of judicial sales fall on a legal holiday, then and in

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

such event, the sales day shall be on some other day appointed by the Court), on the following terms, that is to say:

14) For cash: The Master in Equity, will require, at the time of the bid, a deposit of 5% of the amount of the bid (in cash or equivalent) same to be applied to purchase price if compliance is made, but in the event of non-compliance, the deposit may be forfeited without further hearing and applied first to the costs of the action and then to plaintiff's debt.  Should the successful bidder at the regularly conducted sale fail or refuse to make the required deposit at time of bid or comply with the other terms of the bid within thirty (30) days, then the property may be re-sold on the same terms and conditions on some subsequent Sales Day, but at the risk of the defaulting bidder(s).

15) Interest on the balance of the bid shall be paid through the day of compliance at the rate of 4.0000%.

16) Purchaser shall pay for any statutory commission on sale from the proceeds of sale, deed preparation, costs of recording the deed, and deed stamps.

17) A personal or deficiency judgment having been waived, the bidding will not remain open after the date of sale and compliance with the bid may be made immediately.

18) The sale is subject to assessments, county taxes, existing easements, easements and restrictions of record, and other senior encumbrances.

19)  The Master in Equity, will, by advertisement according to law, give notice of the time and place of such sale and the terms thereof and will execute to the purchaser, or purchasers, a deed to the premises sold.  The Plaintiff, or any other party to this action, may become a purchaser at such sale, and if, upon such sale being made, the purchaser, or purchasers, should fail to comply with the terms thereof within thirty (30) days after the conclusion of the bidding, then the Master in Equity, may advertise the said premises for sale on the next or some other subsequent sales day at the risk of the highest bidder and so from time to time thereafter until a full compliance shall be secured.

20) In the event an agent of the Plaintiff does not appear at the time of sale, the within property shall be withdrawn from sale and sold at the next available sales day upon the terms and conditions as set forth in this Judgment of Foreclosure and Sale or such terms as may be set forth in a supplemental order.

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

21) If Plaintiff is the successful bidder at the sale, for a sum not exceeding the amount of costs, expenses and the indebtedness of Plaintiff in full, Plaintiff may pay to the Master in Equity, only the amount of the costs and expenses crediting the balance of the bid on Plaintiff's indebtedness.

22) The Master in Equity will apply the proceeds of the sale as follows:

FIRST: To the payment of the amount of the costs and expenses of this action, including any Guardian Ad Litem fee or fees of attorneys appointed under Order of Court;

NEXT: To the payment to the Plaintiff or Plaintiff's attorney of the amount of Plaintiff's debt and interest (including attorney fees) or so much thereof as the purchase money will pay on the same;

NEXT: Any surplus should be held pending further Order of this court.

23) In the event the successful bidder is other than the Defendant(s) in possession of the subject property, upon full compliance and title by deed from the Court vested into such purchaser, and upon issuance of a Writ of Assistance by the Court, the Sheriff of Beaufort County is ordered and directed to eject and remove from the premises the occupant(s) of the property sold, together with all personal property located thereon, and put the successful purchaser or his assigns in full, quiet, and peaceable possession of said premises without delay, and to keep said successful bidder or his assigns in such peaceable possession.  All valid tenant rights shall be protected pursuant to the Protecting Tenants at Foreclosure Act of 2009.

24) In the event the successful purchaser is someone other than the Defendant(s) in possession of the subject property, and the occupants have voluntarily vacated the property or have been ejected from the property leaving furnishings, fixtures and items not subject to Plaintiff's Mortgage is said property, and title by deed from the Court is vested into such purchaser, the Purchaser is authorized to remove from the property all furnishings, fixtures and items not subject to the lien of Plaintiff's Mortgage.  The personal property, being deemed abandoned, shall be removed by the Purchaser or its agents from the subject property by placing said property on the public street or highway or by any other means.

25) In accordance with S.C. Code Ann. §30-9-31, the deed of conveyance made pursuant to said sale shall be indexed by the R.M. C. in the name of the owner of record of subject property immediately prior to execution of the deed, as well as in the name of the Master in Equity, who executes such deed as grantor.

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

26) The undersigned will retain jurisdiction to do all necessary acts incident to this foreclosure including, but not limited to, the issuance of a Writ of Assistance.

27) The following is a description of the premises herein ordered to be sold:

All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase I", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Page 42-47.  For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.

Being the same property conveyed unto Richard Cionci by deed from D.R. Horton, Inc., dated September 10, 2009 and recorded October 2, 2009 in Deed Book 2894 at Page 1370 in the ROD Office for Beaufort County, South Carolina.

TMS No. R614 028 000 2663 0000

Property Address:  2116 Blakers Boulevard, Bluffton, SC  29909

AND IT IS SO ORDERED.

**FORM 4**

STATE OF SOUTH CAROLINA                    JUDGMENT IN A CIVIL CASE
COUNTY OF BEAUFORT
IN THE COURT OF COMMON PLEAS               CASE NO. 2018-CP-07-02470

Wilmington Savings Fund Society, FSB, as Owner Trustee of the
Residential Credit Opportunities Trust V-E
                                          PLAINTIFF
vs.
Richard Cionci, Mill Creek Owner's Association, Inc.
                                          DEFENDANT.

| Submitted by: Riley Pope & Laney, LLC<br>Post Office Box 11412, Columbia, SC 29211 | Attorney for Plaintiff |
| --- | --- |

**DISPOSITION TYPE (CHECK ONE)**

☐ **JURY VERDICT.** This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

☐ **DECISION BY THE COURT.** This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered. ☐ See page 2 for additional information.

☐ **ACTION DISMISSED (_CHECK REASON_):** ☐ Rule 12(b), SCRCP; ☐ Rule 41(a), SCRCP (Vol. Nonsuit); ☐ Rule 43(k), SCRCP (Settled); ☐ Other – _____

☐ **ACTION STRICKEN (_CHECK REASON_):** ☐ Rule 40(j) SCRCP; ☐ Bankruptcy;
☐ Binding Arbitration, subject to right to restore to confirm, vacate or modify arbitration award;
☐ Other – _____

☐ **STAYED DUE TO BANKRUPTCY**

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT (_CHECK APPLICABLE BOX_):**
☐ Affirmed; ☐ Reversed; ☐ Remanded; ☐ Other – _____
NOTE: ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☐ See attached order (formal order to follow); ☐ Statement of Judgment by the Court:

**ORDER INFORMATION**

This order ☒ ends ☐ does not end the case.
Additional Information for the Clerk : _____

| **INFORMATION FOR THE PUBLIC INDEX** |
| --- |

**Complete this section below when the judgment affects title to real or personal property or if any amount should be enrolled. If there is no judgment information, indicate "N/A" in one of the boxes below.**

| Judgment in Favor of<br>(List name(s) below) | Judgment Against<br>(List name(s) below) | Judgment Amount to be Enrolled<br>(List amount(s) below) |
| --- | --- | --- |
|  |  | N/A |
|  |  |  |
|  |  |  |

**If applicable, describe the property, including tax map information and address, referenced in the order:**
Tax Map # R614 028 000 2663 0000;          2116 Blakers Boulevard, Bluffton, SC  29909

The judgment information above has been provided by the submitting party. Disputes concerning the amounts contained in this form may be addressed by way of motion pursuant to the SC Rules of Civil Procedure. Amounts to be computed such as interest or additional taxable costs not available at the time the form and final order are submitted to the judge may be provided to the clerk. **Note: Title abstractors and researchers should refer to the official court order for judgment details.**
**E-Filing Note: In E-Filing counties, the Court will electronically sign this form using a separate electronic signature page.**

_____          _____          _____
**Circuit Court Judge**                              **Judge Code**      **Date**

SCRCP Form 4C (2/2017)                                              Page 1

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

**For Clerk of Court Use Only**

This judgment was entered on the _____ day of _____, 2021, and a copy mailed first class or placed in the appropriate attorney's box on this _____ day of _____, 2021 to attorneys of record or to parties (when appearing pro se) as follows:

*Attorneys for Plaintiff:*
Riley Pope & Laney, LLC
Post Office Box 11412
Columbia, SC 29211

*Defendant:*
Richard Cionci
2116 Blakers Blvd
Bluffton, SC, 29909
*Pro Se*

Meredith Bannon, Esquire
Attorney for Mill Creek Owner's Association, Inc.
The Bannon Law Group, LLC
Post Office Box 3691
Beaufort, SC  29910

_____
CLERK OF COURT

Court Reporter: _____

**E-Filing Note:  In E-Filing counties, the date of Entry of Judgment is the same date as reflected on the Electronic File Stamp and the clerk's entering of the date of judgment above is not required in those counties. The clerk will mail a copy of the judgement to parties who are not E-Filers or who are appearing pro se. See Rule 77(d), SCRCP.**

**ADDITIONAL INFORMATION REGARDING DECISION BY THE COURT AS REFERENCED ON PAGE 1**.
This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470



Beaufort Common Pleas

**Case Caption:**    Wilmington Savings Funds Society Fsb As Trustee , plaintiff, et al VS
Richard  Cionci , defendant, et al

**Case Number:**    2018CP0702470

**Type:**    Master/Order/Foreclosure & Sale and Form 4


So Ordered:

s/Marvin H. Dukes III #3069


Electronically signed on 2021-06-03 10:11:34    page 13 of 13

ELECTRONICALLY FILED - 2021 Jun 03 2:52 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

## NOTICE OF SALE
2018-CP-07-02470

BY VIRTUE of a decree heretofore granted in the case of: Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E against Richard Cionci, Mill Creek Owner's Association, Inc., I, the undersigned Master in Equity for Beaufort County, will sell on September 7, 2021, at 11:00 a.m., or on another date, thereafter as approved by the Court, at the County Courthouse in Beaufort, South Carolina, to the highest bidder, the following described property, to-wit:

*All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase I", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Page 42-47. For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.*

*Being the same property conveyed unto Richard Cionci by deed from D.R. Horton, Inc., dated September 10, 2009 and recorded October 2, 2009 in Deed Book 2894 at Page 1370 in the ROD Office for Beaufort County, South Carolina.*

*TMS No. R614 028 000 2663 0000*
*Property Address: 2116 Blakers Boulevard, Bluffton, SC 29909*

TERMS OF SALE: The successful bidder, other than the plaintiff, will deposit with the Master in Equity at conclusion of the bidding, five per cent (5%) of said bid, in cash or equivalent, as evidence of good faith, same to be applied to purchase price in case of compliance, but to be forfeited and applied first to costs and then to plaintiff's debt in the case of noncompliance. Should the successful bidder fail or refuse to make the required deposit at time of bid or comply with the other terms of the bid within thirty (30) days, then the Master in Equity may resell the property on the same terms and conditions (at the risk of the said defaulting bidder). Should the Plaintiff, or one of its representatives, fail to be present at the time of sale, the property is automatically withdrawn from said sale and sold at the next available sales day upon the terms and conditions as set forth in the Judgment of Foreclosure and Sale or any Supplemental Order. The successful bidder will be required to pay for documentary stamps on the Deed and interest on the balance of the bid from the date of sale to the date of compliance with the bid at the rate of 4.0000%.

THIS SALE IS SUBJECT TO ASSESSMENTS, COUNTY TAXES, EXISTING EASEMENTS, EASEMENTS AND RESTRICTIONS OF RECORD, AND OTHER SENIOR ENCUMBRANCES.

No personal or deficiency judgment being demanded, the bidding will not remain open after the date of sale, but compliance with the bid may be made immediately.

**NOTICE: The foreclosure deed is not a warranty deed. Interested bidders should satisfy themselves as to the quality of title to be conveyed by obtaining an independent title search well before the foreclosure sale date. ATTENDEES MUST ABIDE BY SOCIAL DISTANCING GUIDELINES AND MAY BE REQUIRED TO WEAR A MASK OR OTHER FACIAL COVERING. Any person who violates said protocols is subject to dismissal at the discretion of the selling officer or other court officials.**

RILEY POPE & LANEY, LLC
Post Office Box 11412
Columbia, SC 29211
(803) 799-9993
Attorneys for Plaintiff

*SIGNATURE PAGE TO FOLLOW*

ELECTRONICALLY FILED - 2021 Aug 18 3:24 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

ELECTRONICALLY FILED - 2021 Aug 18 3:24 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470



Beaufort Common Pleas

**Case Caption:**     Wilmington Savings Funds Society Fsb As Trustee , plaintiff, et al VS
Richard  Cionci , defendant, et al

**Case Number:**     2018CP0702470

**Type:**     Master/Order/Notice of Foreclosure Sale


So Ordered:

s/Marvin H. Dukes III #3069


Electronically signed on 2021-08-18 11:02:10     page 2 of 2

**United States Bankruptcy Court**
**District of South Carolina**

Case Number: 21–02263–jw                    Chapter: 13

**In re:**

Richard Michael Cionci

| Entered By The Court 11/18/21 | ORDER | Filed By The Court 11/18/21 Laura A. Austin Clerk of Court US Bankruptcy Court |

---

CIII Order – The plan does not comply with the requirements of Chapter 13. Therefore, confirmation is denied and the case is hereby dismissed. AND IT IS SO ORDERED. Signed By: Judge John E. Waites, US Bankruptcy Court – District of South Carolina.

John E. Waites
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

In re:

    RICHARD MICHAEL CIONCI

        Debtor(s)

Case No. 21-02263-JW

## CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT

James M. Wyman, chapter 13 trustee, submits the following Final Report and Account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The trustee declares as follows:

1) The case was filed on 08/31/2021.

2) The plan was confirmed on NA.

3) The plan was modified by order after confirmation pursuant to 11 U.S.C. § 1329 on NA.

4) The trustee filed action to remedy default by the debtor in performance under the plan on NA.

5) The case was dismissed on 11/18/2021.

6) Number of months from filing to last payment: 0.

7) Number of months case was pending: 3.

8) Total value of assets abandoned by court order: NA.

9) Total value of assets exempted: NA.

10) Amount of unsecured claims discharged without payment: $0.00.

11) All checks distributed by the trustee relating to this case have cleared the bank.

**UST Form 101-13-FR-S (9/1/2009)**

| Receipts: | | |
|---|---|---|
| Total paid by or on behalf of the debtor | $0.00 | |
| Less amount refunded to debtor | $0.00 | |
| **NET RECEIPTS:** | | **$0.00** |

| Expenses of Administration: | | |
|---|---|---|
| Attorney's Fees Paid Through the Plan | $0.00 | |
| Court Costs | $0.00 | |
| Trustee Expenses & Compensation | $0.00 | |
| Other | $0.00 | |
| **TOTAL EXPENSES OF ADMINISTRATION:** | | **$0.00** |
| Attorney fees paid and disclosed by debtor: | $0.00 | |

**Scheduled Creditors:**

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| ADVANCE AMERICA | Unsecured | 620.00 | NA | NA | 0.00 | 0.00 |
| CashNetUSA | Unsecured | 2,900.00 | 3,599.15 | 3,599.15 | 0.00 | 0.00 |
| Genesis FC Card Services | Unsecured | 404.73 | NA | NA | 0.00 | 0.00 |
| INTERNAL REVENUE SERVICE | Priority | 1,010.00 | 1,380.68 | 1,380.68 | 0.00 | 0.00 |
| Jefferson Capital | Unsecured | 164.37 | NA | NA | 0.00 | 0.00 |
| Mill Bank Owner's Association | Secured | 13,233.00 | 15,869.28 | 15,869.28 | 0.00 | 0.00 |
| US Department of Education | Unsecured | 23,500.00 | 17,792.60 | 17,792.60 | 0.00 | 0.00 |
| Wilmington Savings Fund Society FSB | Secured | 4,628.00 | 41,365.34 | 41,365.34 | 0.00 | 0.00 |
| Wilmington Savings Fund Society FSB | Secured | 1,157.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Wilmington Savings Fund Society FSB | Secured | 2,314.00 | 2,314.54 | 2,314.54 | 0.00 | 0.00 |

**UST Form 101-13-FR-S (9/1/2009)**

**Summary of Disbursements to Creditors:**

|  | Claim Allowed | Principal Paid | Interest Paid |
|---|---|---|---|
| **Secured Payments:** | | | |
| Mortgage Ongoing | $0.00 | $0.00 | $0.00 |
| Mortgage Arrearage | $43,679.88 | $0.00 | $0.00 |
| Debt Secured by Vehicle | $0.00 | $0.00 | $0.00 |
| All Other Secured | $15,869.28 | $0.00 | $0.00 |
| **TOTAL SECURED:** | **$59,549.16** | **$0.00** | **$0.00** |
| | | | |
| **Priority Unsecured Payments**: | | | |
| Domestic Support Arrearage | $0.00 | $0.00 | $0.00 |
| Domestic Support Ongoing | $0.00 | $0.00 | $0.00 |
| All Other Priority | $1,380.68 | $0.00 | $0.00 |
| **TOTAL PRIORITY**: | **$1,380.68** | **$0.00** | **$0.00** |
| | | | |
| **GENERAL UNSECURED PAYMENTS**: | **$21,391.75** | **$0.00** | **$0.00** |

**Disbursements:**

| | |
|---|---|
| Expenses of Administration | $0.00 |
| Disbursements to Creditors | $0.00 |
| | |
| **TOTAL DISBURSEMENTS** : | **$0.00** |

12)  The trustee certifies that, pursuant to Federal Rule of Bankruptcy Procedure 5009, the estate has been fully administered, the foregoing summary is true and complete, and all administrative matters for which the trustee is responsible have been completed. The trustee requests a final decree be entered that discharges the trustee and grants such other relief as may be just and proper.

Dated: 12/06/2021                    By: /s/ James M. Wyman
                                          Trustee

STATEMENT:  This Unified Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

**UST Form 101-13-FR-S (9/1/2009)**

## NOTICE OF SALE
### 2018-CP-07-02470

BY VIRTUE of a decree heretofore granted in the case of: Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E against Richard Cionci, Mill Creek Owner's Association, Inc., I, the undersigned Master in Equity for Beaufort County, will sell on February 7, 2022, at 11:00 a.m., or on another date, thereafter as approved by the Court, at the County Courthouse in Beaufort, South Carolina, to the highest bidder, the following described property, to-wit:

*All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase I", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Page 42-47.  For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.*

*Being the same property conveyed unto Richard Cionci by deed from D.R. Horton, Inc., dated September 10, 2009 and recorded October 2, 2009 in Deed Book 2894 at Page 1370 in the ROD Office for Beaufort County, South Carolina.*

*TMS No. R614 028 000 2663 0000*
*Property Address:  2116 Blakers Boulevard, Bluffton, SC  29909*


TERMS OF SALE:  The successful bidder, other than the plaintiff, will deposit with the Master in Equity at conclusion of the bidding, five per cent (5%) of said bid, in cash or equivalent, as evidence of good faith, same to be applied to purchase price in case of compliance, but to be forfeited and applied first to costs and then to plaintiff's debt in the case of noncompliance.  Should the successful bidder fail or refuse to make the required deposit at time of bid or comply with the other terms of the bid within thirty (30) days, then the Master in Equity may resell the property on the same terms and conditions (at the risk of the said defaulting bidder).  Should the Plaintiff, or one of its representatives, fail to be present at the time of sale, the property is automatically withdrawn from said sale and sold at the next available sales day upon the terms and conditions as set forth in the Judgment of Foreclosure and Sale or any Supplemental Order.  The successful bidder will be required to pay for documentary stamps on the Deed and interest on the balance of the bid from the date of sale to the date of compliance with the bid at the rate of 4.0000%.

THIS SALE IS SUBJECT TO ASSESSMENTS, COUNTY TAXES, EXISTING EASEMENTS, EASEMENTS AND RESTRICTIONS OF RECORD, AND OTHER SENIOR ENCUMBRANCES.

No personal or deficiency judgment being demanded, the bidding will not remain open after the date of sale, but compliance with the bid may be made immediately.

**NOTICE: The foreclosure deed is not a warranty deed. Interested bidders should satisfy themselves as to the quality of title to be conveyed by obtaining an independent title search well before the foreclosure sale date.   ATTENDEES MUST ABIDE BY SOCIAL DISTANCING GUIDELINES AND MAY BE REQUIRED TO WEAR A MASK OR OTHER FACIAL COVERING.  Any person who violates said protocols is subject to dismissal at the discretion of the selling officer or other court officials.**

RILEY POPE & LANEY, LLC
Post Office Box 11412
Columbia, SC 29211

ELECTRONICALLY FILED - 2022 Jan 19 11:46 AM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

(803) 799-9993
Attorneys for Plaintiff

*SIGNATURE PAGE TO FOLLOW*

ELECTRONICALLY FILED - 2022 Jan 19 11:46 AM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470



Beaufort Common Pleas

**Case Caption:**    Wilmington Savings Funds Society Fsb As Trustee , plaintiff, et al VS
Richard  Cionci , defendant, et al

**Case Number:**    2018CP0702470

**Type:**    Master/Order/Notice of Foreclosure Sale


So Ordered:

s/Marvin H. Dukes III #3069


Electronically signed on 2022-01-19 11:40:17      page 3 of 3

ELECTRONICALLY FILED - 2022 Jan 19 11:46 AM - BEAUFORT - COMMON PLEAS - CASE#2018CP0702470

# NOTE

**Multistate**

September 29, 2009
[Date]

2116 Blakers Boulevard, Bluffton, SC 29909
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means DHI Mortgage Company, Ltd.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred ninety-nine thousand four hundred thirty and 00/100

Dollars (U.S. $ 199,430.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of five and one-eighth percent (        5.125 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1        , 2009        . Any principal and interest remaining on the first day of October        , 2039        , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 911209, Dallas, TX 75391-1209

or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,085.88        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four                               percent (                          4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (0809)
Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)      _____ (Seal)
Richard Cionci                        -Borrower                                          -Borrower


_____ (Seal)      _____ (Seal)
                                      -Borrower                                          -Borrower


PAY TO THE ORDER OF
Wells Fargo Bank, N.A.            (Seal)      _____ (Seal)
WITHOUT RECOURSE                  -Borrower                                          -Borrower
DHI MORTGAGE COMPANY LTD
BY· DHI MORTGAGE COMPANY GP, INC.
ITS GENERAL PARTNER
_____ (Seal)      _____ (Seal)
CANDISS FARRINGTON, ASSISTANT SECRETARY -Borrower                                 -Borrower


WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _William R. Martin_

William R. Martin
Vice President

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (0809)
Page 3 of 3

FILE NUM 2009057339
10/02/2009  09:12:18 AM
REC'D BY A WILLIAMS RCPT# 597471
RECORDING FEES 18.00

Return To:
DHI Mortgage Company
Post Closing Department
12357 Riata Trace Pkwy.
Suite C150
Austin, TX  78727

Prepared By:

————————————————[Space Above This Line For Recording Data]————————————————

**State of South Carolina**          # MORGTAGE

| FHA Case No. |
| --- |

MIN ▮▮▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on September 29, 2009
The Mortgagor is Richard  Cionci, an unmarried man

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. DHI Mortgage Company, Ltd.

("Lender") is organized and existing under the laws of Texas                                          , and
has an address of 12357 Riata Trace Pkwy, Suite C150
Austin, TX  78727                                    . Borrower owes Lender the principal sum of
one hundred ninety-nine thousand four hundred thirty and 00/100
                                        Dollars (U.S. $ 199,430.00                ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1, 2039
                          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and

FHA South Carolina Mortgage with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(SC) (0409).01        Amended 2/01
Page 1 of 9              Initials: _____

assigns), and to the successors and assigns of MERS the following described property located in
Beaufort                                        County, South Carolina:
SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF FOR ALL
PURPOSES.

Parcel ID Number: 7

which has the address of 2116 Blakers Boulevard                                [Street]

Bluffton                                  [City], South Carolina 29909        [Zip Code]

("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns), and to the successors and assigns of MERS, forever, together with all the improvements now or
hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the
property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is
referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only
legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or
custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of
those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action
required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these
items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures

VMP®-4N(SC) (0409).01                          Page 2 of 9                    Initials: _____

Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant

VMP®-4N(SC) (0409).01                          Page 3 of 9

Initials: _____



or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

        **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

VMP®-4N(SC) (0409).01                          Page 4 of 9

Initials: 

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

VMP®-4N(SC) (0409) 01                          Page 5 of 9                          Initials:

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: 

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower waives all rights of homestead exemption in the Property.

21. **Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                             Richard Cionci          -Borrower

_____    _____ (Seal)
                                                                     -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                     -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                     -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                     -Borrower


VMP®-4N(SC) (0409).01                    Page 8 of 9

**STATE OF SOUTH CAROLINA,** BEAUFORT

**County ss:**
do hereby certify that

I, Paula M. Kilgore , Notary

Richard Cionci

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this _____ day of _____

_____
Notary Public for South Carolina

My Commission Expires: 12/03/2018

# PLANNED UNIT DEVELOPMENT RIDER

```
FHA Case No.
███████████████
```

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th                     day of
September, 2009               , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
DHI Mortgage Company, Ltd.

("Lender") of the same date and covering the Property described in the Security Instrument
and located at: 2116 Blakers Boulevard, Bluffton, SC 29909

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

CYPRESS RIDGE

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association (or equivalent entity holding title to common
     areas and facilities), acting as trustee for the homeowners, maintains, with a
     generally accepted insurance carrier, a "master" or "blanket" policy insuring the
     Property located in the PUD, including all improvements now existing or
     hereafter erected on the mortgaged premises, and such policy is satisfactory to
     Lender and provides insurance coverage in the amounts, for the periods, and
     against the hazards Lender requires, including fire and other hazards included
     within the term "extended coverage," and loss by flood, to the extent required
     by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this
     Security Instrument for the monthly payment to Lender of one-twelfth of the
     yearly premium installments for hazard insurance on the Property, and (ii)
     Borrower's obligation under Paragraph 4 of this Security Instrument to maintain
     hazard insurance coverage on the Property is deemed satisfied to the extent
     that the required coverage is provided by the Owners Association policy.
     Borrower shall give Lender prompt notice of any lapse in required hazard
     insurance coverage and of any loss occurring from a hazard. In the event of a
     distribution of hazard insurance proceeds in lieu of restoration or repair
     following a loss to the Property or to common areas and facilities of the PUD,
     any proceeds payable to Borrower are hereby assigned and shall be paid to
     Lender for application to the sums secured by this Security Instrument, with
     any excess paid to the entity legally entitled thereto.
B.   Borrower promises to pay all dues and assessments imposed pursuant to the
     legal instruments creating and governing the PUD.
C.   If Borrower does not pay PUD dues and assessments when due, then Lender
     may pay them. Any amounts disbursed by Lender under this paragraph C shall
     become additional debt of Borrower secured by the Security Instrument. Unless

███████████████

**FHA Multistate PUD Rider - 10/95**
Wolters Kluwer Financial Services
VMP®-589U (0402).02
Page 1 of 2       Initials:

Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)                    _____ (Seal)
Richard Cronci          -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                           -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                           -Borrower

VMP®-589U (0402).02                 Page 2 of 2

*Legal Exhibit A*

All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase 1", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Pages 42 - 47. For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.

This being the same property conveyed to the within Borrower by Deed of D. R. Horton, Inc. recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Deed Book 2894 at Page 1370

This Mortgage was prepared in the Law Office of Laurich and Wiseman, P. A., 104 Buckwalter Parkway, Suite 1-F, Bluffton, South Carolina 29910.

BEAUFORT COUNTY SC
BK 03068 PGS 0604-0605
FILE NUM 2011032601
06/28/2011   03:57:44 PM
REC'D BY B BING RCPT# 650650
RECORDING FEES 7.00

Document drafted and prepared by and
when Recorded, Return to:

Wells Fargo Home Mortgage
Yer Thao, x9999-018
PO Box 1629
Minneapolis, MN 55467

MERS Phone: 888-679-6377

MIN: ▮▮▮▮▮▮▮▮▮

(Space above this line for recorder use only)

### ASSIGNMENT OF MORTGAGE

For value received, **Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for DHI Mortgage Company, Ltd**, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, the undersigned hereby grants, assigns, and transfers to:

**Wells Fargo Bank, NA,** 1 Home Campus, Des Moines, IA 50328

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Mortgage, herein "Security Instrument" executed by Richard Cionci, an unmarried man, dated September 29, 2009, in the amount of $199,430.00 and given to Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for DHI Mortgage Company, Ltd and recorded on October 2, 2009 as Document or Instrument Number 2009057339 and/or in Book 02894, Page 1373, of Official Records in the County Recorder's office of Beaufort County, South Carolina, describing land therein as:

**Property Address:**      2116 Blakers Boulevard, Bluffton, SC 29909
**Parcel ID #:**      7
**Legal Description:**      **See Attached**

Signed this      6/24/11

Witness: Stacey Pettus

Witness: RAMESH VARDAN

**Mortgage Electronic Registration Systems, Inc.**

Mike Murphy , Assistant Secretary

### SOUTH CAROLINA ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA                }
                                                        }
COUNTY OF DAKOTA                  }

On this   6/24/11   before me,   ANN M GARDNER, personally appeared:   Mike Murphy   , Assistant secretary, Mortgage Electronic Registration Systems, Inc., ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public: ANN M GARDNER
My Commission Expires: JAN 31 2013

ANN M GARDNER
Notary Public
Minnesota
My Commission Expires Jan. 31, 2013

Page 1 of 2

**Legal Description**

All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase 1", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Pages 42 - 47. For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.

This being the same property conveyed to the within Borrower by Deed of D. R. Horton, Inc. recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Deed Book ████ at Page 1820

Page 2 of 2

BEAUFORT COUNTY SC - ROD
2017 46833 015D
FILE NUM 2017046741
08/25/2017  10:46:47 AM
RCPT# 861950
RECORDING FEES 8.00

# RECORD *1st*

**Claim Date: 6/28/2016**

**FHA Case No.:** ███████████

**Servicer Loan No.:** ███████████████

After recording, please return to:

_____
_____
_____
_____

This instrument prepared by:
Wells Fargo Home Mortgage
Ger Yang
1000 Blue Gentian Rd #200
Eagan, MN 55121-4400

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

WELLS FARGO BANK, N.A. , whose address is 1 Home Campus, Des Moines, IA 50328 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7th Street, S.W., Washington, D.C. 20410 ("Assignee"), and its successors and assigns, without recourse, the following:

1.  that certain Mortgage dated September 29, 2009, executed by Richard Cionci, an unmarried man, to Mortgage Electronic Registration Systems, Inc., as nominee for DHI Mortgage Company, LTD, having an original principal sum of $199430.00 with interest, secured thereby, and recorded on October 02, ~~2007~~ *2009* as Instrument Number 2009057339 and/or in Book/Volume/Liber/Reel 02894, at Page/Folio 1373, among the land records of Beaufort County, SC, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated September 29, 2009 (the "Note"); and

2.  such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Property Address: 2116 Blakers Boulevard, Bluffton, SC 29909
Assessor's/Tax ID No.: N/A
Legal Description: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the _30th_ day of _JUNE_, 20 _16_.

WELLS FARGO BANK, N.A.

By: _____

Name: _____Kristoffer Michael Pumarlo_____

Title: Vice President Loan Documentation

WITNESS: _____

Name: _____Liza Bhattarai Neupane_____

WITNESS: _____

Name: _____Juliane M Christensen_____


## NOTARY ACKNOWLEDGMENT

State of Minnesota    )

), ss:

County of Dakota    )


On _6/30/2016_, before me, _____Jennifer Rae Anderson_____, a Notary Public in the State of _Minnesota_, personally appeared _____Kristoffer Michael Pumarlo_____, Vice President Loan Documentation, for WELLS FARGO BANK, N.A. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.


JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

Notary Public: _____Jennifer Rae Anderson_____

My Commission Expires: _1/31/2020_

[ SEAL ]

## Exhibit A – Legal Description

All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase 1", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005,  revised and recorded in Plat Book 124 at Pages 42 - 47.  For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.

This being the same property conveyed to the within Borrower by Deed of D. R. Horton, Inc. recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Deed Book 2524 at Page 1370

This Mortgage was prepared in the Law Office of Laurich and Wiseman, P. A., 104 Buckwalter Parkway, Suite 1-F, Bluffton, South Carolina 29910.

BEAUFORT COUNTY SC - ROD
FILE NUM 2017046742
08/25/2017  10:46:47 AM
RCPT# 861950
RECORDING FEES 9.00

## RECORD *2nd*

Claim Date: 6/28/2016                    FHA Case No.: ███

                                         Servicer Loan No.: ███

After recording, please return to:              This instrument prepared by:
_____              Wells Fargo Home Mortgage
_____              Ger Yang
_____              1000 Blue Gentian Rd #200
_____              Eagan, MN 55121-4400

### ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7th Street, S.W., Washington, D.C. 20410 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST A, whose address is 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806 ("Assignee"), and its successors and assigns, without recourse, the following:

1. that certain Mortgage dated September 29, 2009, executed by Richard Cionci, an unmarried man, to Mortgage Electronic Registration Systems, Inc., as nominee for DHI Mortgage Company, LTD having an original principal sum of $199430.00 with interest, secured thereby, and recorded on October 02, 2007 *26, 2009* as Instrument Number 2009057339 and/or in Book/Volume/Liber/Reel 02894, at Page/Folio 1373, among the land records of Beaufort County, SC, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated September 29, 2009 (the "Note"); and
2. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Property Address: 2116 Blakers Boulevard, Bluffton, SC 29909
Assessor's/Tax ID No.: N/A
Legal Description: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the __13ᵀᴴ__ day of ___Feb___, 20_17_.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

By: _____

                Chris Lechtanski, AVP of Default
                for Carrington Mortgage Services, LLC, Attorney in Fact

Name: _____

Title: Authorized Agent

WITNESS:                                    WITNESS:

Name: TAMARA ROMERO              Name: Liliana Alvarez

## NOTARY ACKNOWLEDGMENT

City of Washington    )

                      ), ss:

District of Columbia   )

On _____, before me, _____, a Notary Public in the State of _____, personally appeared _____, as Authorized Agent for the Secretary of Housing and Urban Development, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

SEE ATTACHED

                                 _____

                                 Notary Public: _____

                                 My Commission Expires: _____

[ SEAL ]

## **Exhibit A – Legal Description**

All that certain piece, parcel or lot of land, situate, lying and being in Bluffton Township, Beaufort County, South Carolina, designated as Lot 7 on a plat entitled "Cypress Ridge Phase 1", prepared by Boyce L. Young, SCRLS No. 11079, Thomas & Hutton Engineering Co. dated September 20, 2005, revised and recorded in Plat Book 124 at Pages 42 - 47. For a more particular description of the courses, metes, bounds and distances of said lots, reference is hereby made to said plat of record.

This being the same property conveyed to the within Borrower by Deed of D. R. Horton, Inc. recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Deed Book 2894 at Page 1370.

This Mortgage was prepared in the Law Office of Laurich and Wiseman, P. A., 104 Buckwalter Parkway, Suite 1-F, Bluffton, South Carolina 29910.

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document, to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

# CALIFORNIA ALL – PURPOSE

## CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of Orange

On ___FEB 1 3 2017___ before me, Judit Saucedo, Notary Public, personally appeared,

___Chris Lechtanski___, who proved to me on the basis of satisfactory evidence to be

the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,

executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JUDIT SAUCEDO
COMM. # 2011945
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. MARCH 27, 2017

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

    _____
    (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

BEAUFORT COUNTY SC - ROD
BK 3758 Pgs 2718-2719
FILE NUM 2019024456
05/10/2019  08:19:01 AM
RCPT# 931048
RECORDING FEES 7.00

RETURN TO:
C. R. Hall
Residential Credit Opportunities Trust V
3020 Old Ranch Parkway, Suite 180
Seal Beach CA 90740 .                **ASSIGNMENT OF MORTGAGE**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned,  **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A  1600 South Douglass Road, Anaheim CA 92806** (Assignor) by these presents does assign, and set over, without recourse, to **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C  3020 Old Ranch Parkway, Suite 180, Seal Beach CA 90740 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **RICHARD CIONCI, AN UNMARRIED MAN** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR DHI MORTGAGE COMPANY, LTD. ITS SUCCESSORS AND ASSIGNS.    Said mortgage **Dated: 9/29/2009** is recorded in the **State** of SC, County of Beaufort on 10/2/2009, as Book 02894 Page 1373 AMOUNT: $ **199,430.00**    Property Address: 2116 BLAKERS BOULEVARD, BLUFFTON, SC  29909

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed by its proper signatory.
Executed on: ____APR 2 3 2019____

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A  BY CARRINGTON MORTGAGE SERVICES, LLC AS ITS ATTORNEY-IN-FACT

By: _____          _____
       Chris Lechtenski, AVP of Default
       for Carrington Mortgage Services, LLC, Attorney in Fact

Witness: __Consuelo Ghaly__          Witness: __Tamara Romero__

# DOA recorded 10/10/2016 in Greenville, SC in Book 2493
page 5145 as Inst. # ████████

RETURN TO:
C. R. Hall
Residential Credit Opportunities Trust V
3020 Old Ranch Parkway, Suite 180
Seal Beach CA 90740          **ASSIGNMENT OF MORTGAGE**          Send Any Notices To Assignee.

**The Power of Attorney was filed in Beaufort County, South Carolina on _____ in**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of _____California_____
County of _____Orange_____

On APR 2 3 2019 before me, _____Wheny Wulandari_____, Notary Public, personally appeared
_____Chris Lechtanski_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary public, _____Wheny Wulandari_____
My commission expires: OCT 1 7 2021

WHENY WULANDARI
Notary Public – California
Orange County
Commission # 2214915
My Comm. Expires Oct 17, 2021

SC   Beaufort

BEAUFORT COUNTY SC - ROD
BK 3959 Pgs 1849-1850
FILE NUM 2021003446
01/15/2021  08:18:51 AM
RCPT# 1012993
RECORDING FEES 10.00

Document Prepared by:
AMIP Management
Ashley Fuentes
3020 Old Ranch Pkwy, #180
Seal Beach, CA 90740

Recording Requested By/Return To:
AMIP Management
Attn: Dena Noble
3020 Old Ranch Pkwy #180
Seal Beach, CA 90740

Servicer Ln: ███████

### ASSIGNMENT OF MORTGAGE

For Value Received, **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C** (herein "Assignor") whose address is 3020 OLD RANCH PARKWAY, STE 180, SEAL BEACH, CA 90740, does hereby grant, sell, assign, transfer and convey, unto **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-E**, (herein "Assignee"), whose address is 3020 OLD RANCH PARKWAY, STE 180, SEAL BEACH, CA 90740, a certain described  MORTGAGE, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such MORTGAGE.

CLOSED END MORTGAGE  FROM RICHARD CIONCÍ, AN UNMARRIED MAN, TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DHI MORTGAGE COMPANY, LTD., AMOUNTING TO $199,430.00, DATED 09/29/2009  FILED FOR RECORD 10/02/2009, AND RECORDED IN BOOK 02894  PAGE 1373 IN BEAUFORT COUNTY RECORDS., SOUTH CAROLINA.
Property Address: 2116 BLAKERS BOULEVARD, BLUFFTON, SC, 29909

          IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of MORTGAGE on
January 14, 2021

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C
By: American Mortgage Investment Partners Management, LLC, its Attorney-in-Fact*

By: _____
Ron McMahan
CEO

Witness: _____
Name:                    M. McMahan

Witness: _____
Name:                    A. Fuentes

> A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange

On **1-14-2021** before me, **Valya Fisher**, the undersigned Notary Public, personally appeared Ron McMahan who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                                    Notary Public

                                                                (Seal)

VALYA FISHER
Notary Public - California
Orange County
Commission # 2283516
My Comm. Expires Mar 29, 2023

Loan No.: ████

## LOAN MODIFICATION AGREEMENT
with Trial Payment Plan Provision
(40 Year Term / Non Escrow)

This Loan Modification Agreement ("Agreement") is made and entered into as of **06/21/2019**, by and between Richard Cionci  ("Consumer") and Wilmington Savings Fund Society, FSB, As Owner trustee of the Residential Credit Opportunities Trust V-C ("Lender"), with reference to the following facts and circumstances:

RECITALS

    A.   Lender or its predecessor in interest made a loan (the "Loan") to Consumer in the original principal amount of (**$199,430.00**) evidenced by that certain "Promissory Note" and other related loan agreements and documents (collectively, the "Loan Documents") dated **09/29/2009** and modified **10/16/2017**.  The Note ("Note") is secured by real and personal property collateral including, without limitation, a Security Instrument (the "Security Instrument") encumbering certain real property located at: 2116 BLAKERS BOULEVARD, BLUFFTON, SC 29909 (the "Property") and improvements thereto (if any).

        The current Unpaid Principal Balance (UPB) of the Note is **$248,711.54** with interest thereon at a rate of **4.00%** [Fixed] per annum from **12/01/2017**.  The maturity date of the Note is **10/01/2039**. The Deferred Amount is **$26,270.28**. The Current unpaid/accrued interest on the Note total **$10,777.50** ("Accrued/Unpaid Interest"); Accrued Late Charges are **$208.95**; Unpaid Charges total **$7,700.90**. The total amount in arrears is **$44,957.63** good through **06/01/2019**. Consumer is in default of the Note and Loan Documents for failure to pay the **06/01/2018** through **06/01/2019** installments plus all accrued late charges, etc.

    B.   Consumer has requested that Lender agree to modify the Note as the same may be modified hereby.  Lender is willing to do so on the terms set forth herein.  The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect.

WHEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL CONDITIONS AND AGREEMENTS CONTAINED HEREIN, CONSUMER AND LENDER AGREE AS FOLLOWS:

1.   <u>Trial Payment Period</u>: Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to place the foreclosure on hold.  Consumer understands, as a condition of entering into this Loan Modification, that there will be a Twelve (12) consecutive month trial period, beginning **07/01/2019** and ending **06/01/2020**.  During this Trial Payment Plan the Consumer understands that the loan will remain in foreclosure.  If Consumer fails to make a monthly payment or exceeds a delinquency of Thirty (30) days or more, Consumer agrees to stipulate to Foreclosure and waives their right to all defenses upon default of this New Loan Modification Agreement. Lender agrees to waive deficiency against Consumer in the event of a new foreclosure or re-default.  All Deferred amounts will be due and payments in the event of a default during the Trial Period.  During the same Trial Period and upon receipt of the Twelve (12) successful and timely payments of **$1,157.27** per month, Lender agrees to dismiss the foreclosure.

2.   <u>Loan Modification</u>. Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to modify the Loan.  As of **06/01/2019**, the amount payable under the Note and Security Instrument ("the Unpaid Principal Balance") shall be decreased to **$240,000.00** consisting of the amount(s) loaned to Consumer by Lender. The remaining unpaid arrears amount of **$53,669.17**, which includes the Principal Balance reduction of **$8,711.54** and arrears amount of **$44,957.63**, shall be deferred and placed at the end of the loan, which means that this amount will not accrue any further interest and will become due and payable as a "Balloon Payment", upon Loan Maturity. For every **24 months** of successful timely payments completed by Consumer for the first **2 years**, Lender agrees that the deferred balance may be waived as described in section 5 below**.** The arrears is limited to unpaid interest, escrows and any legal fees and related foreclosure costs that may have been accrued for work completed itemized in Section B above.  The Consumer will be required to pay the unpaid principal balance in the event of a refinance, pay off of the loan, any transfer of interest in the home, default of any terms as set forth in this Agreement, or at loan maturity. The Maturity of the Loan will be reset to **06/01/2059**.

3. Consumer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the changed yearly rate of **5.00%** [Fixed]. The New Monthly installment payments shall be **$1,157.27**. This amount consists of Principal and Interest (P&I) amount of **$1,157.27** only.

   Consumer understand that any Escrow account associated with this account will be terminated immediately. Any Excess funds will be moved to suspense to be used at the Lender's discretion.

   Consumer shall be fully responsible for paying any "delinquent and future" Property Taxes and "delinquent and future" Homeowners Insurance or Homeowners Association fees that became due prior to the effective date of this modification agreement and shall show proof to Lender upon request.

4. Effective **07/01/2019**, Consumer promises to pay **$1,157.27**, consisting of PI Payment, and shall continue making monthly payments of PI due on the 1st day of each succeeding month thereafter, until principal and interest are paid in full. If on **06/01/2059** (the "Maturity Date"), Consumer still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Consumer will pay these amounts in full at that time.

5. <u>Balloon Payment Optional Reduction</u>.

   - Upon Consumer's successful completion of Twenty-Four **(24)** consecutive on time payments, Lender agrees to waive the deferred Unpaid Interest Amounts by **$53,669.17**. Reducing the total Balloon Payment to **$0.00**.

     (Consecutive on time payments consists of mortgage payments not exceeding delinquency of Thirty **(30)** days or more)

6. <u>Total of Payments Disclosure</u>: I, Richard Cionci ("Consumer") acknowledge that I am indebted to ("Lender") in the amount of **$555,489.60** should I make all payments as scheduled in the Loan Modification Agreement. This amount includes the Principal and Interest that would be paid through the life of this Agreement. However; should Consumer choose to refinance or sell the Property prior to the Maturity Date, a payoff quote will be calculated consistent with the remaining Unpaid Principal Balance as detailed in Section 2.

   I, Richard Cionci ("Consumer") fully intend to pay this loan, through the proposed Loan Modification with the terms that you have provided.

7. <u>Time is of the Essence.</u> Documents must be returned within 10 days upon receipt whether by messenger or electronically. Please be aware if the signed agreement is not returned/received with the agreed upon funds in the time allotted, this offer is null and void.

8. <u>Interest Rate</u>. Lender agrees that the interest rate at which interest accrues on the unpaid principal balance of the Note shall be modified to **5.00%** and will continue through the Maturity Date of **06/01/2059**.

9. <u>Payments</u>: Consumer shall send all payments to: FCI LENDER SERVICES, INC., 8180 E. KAISER BLVD., ANAHEIM HILLS, CA 92808; 1-800-931-2424, Monday through Friday 8:00 am to 5:00 pm.

10. <u>Assignment of Leases and Rents Receivership:</u> The existing Mortgage and Note shall be amended to include the following: In the event that loan is in default and Consumers are generating any gross income from the property by virtue of a tenancy or any other arrangement. Consumers agree to Irrevocably assign and transfer to Lender the right title and interest of Consumer in all existing and future leases and agreements whether or not in writing and any rents and deposits derived and collected therefrom, affecting and pertaining to the use, enjoyment or occupancy of any part of the premises. Consumer consents to the entry by Lender, Lender's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Consumer further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

11. <u>Additional Agreements:</u>

    Consumer agrees to the following:

    a. In the event Consumer defaults under this Agreement, without waiving any rights and remedies otherwise available to Lender, Lender shall thereupon be entitled to require and Consumer irrevocably consents to enter either Lender' Deed-In-Lieu or Short Sale program with respect to the Property. Under

Consumer(s) Initials _____ _RC_

the Deed-In-Lieu program you will voluntarily transfer ownership of the Property to Lender or Lender's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

b. Consumer will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Lender's procedures in connection with such program(s).

12. <u>Conditions</u>: Lender's agreement to forbear and modify loan shall be subject to Consumer's full and timely satisfaction of all the terms listed in this Agreement and the following conditions:

   a. Insurance and Property Taxes. At all times during the term of this agreement Consumer must 1) Maintain adequate homeowner's insurance; and 2) keep all property taxes and utilities paid current.
   b. Application of Payments upon Cancellation. If this Agreement is cancelled due to Consumer's non-compliance, the Loan will revert retroactively back to the original terms.
   c. Termination. Lender's agreement to defer, forbear and modify loan shall automatically terminate, without further notice, act or instrument, upon the occurrence of any of the following events:
      - If a petition for relief under any federal or state bankruptcy, reorganization or insolvency statute or law is filed by or against Consumer or any guarantor of the Loan or any general partner of Consumer or of any guarantor of the Loan after the Effective Date of this agreement; or
      - Consumer fails to timely perform and observe any of the covenants, agreements and obligations contained in the Loan Documents, except for the obligation of the Consumer to make payments of Principal and interest; or
      - Consumer fails to timely perform any of the other covenants, agreements and obligations set forth in this Agreement; or
      - Consumer fails to pay off the Note (in full) on or before 5:00 p.m. (Pacific Time) on the Maturity Date set forth in this Agreement; or
      - If all or any part of the Property or any interest in, is sold or transferred (or if Consumer is not a natural person and a beneficial interest in; Consumer has sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Consumer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Consumer must pay all sums secured by the Security Instrument. If Consumer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Consumer.

13. <u>Termination of Loan Modification</u>. In the event Consumers default as hereinabove defined, then all loan modifications agreed to in writing by Lender shall be null and void, and thereafter all terms of the Mortgage shall revert back to their original terms and condition, as if this Agreement had no force or effect and ("Lender") at its option continue with foreclosure. The undersigned parties hereby agree to waive any defenses as to the enforcement of any default in the terms of this Agreement and judgement for foreclosure upon any default in the terms of the Agreement. Any waiver of arrears and Unpaid Principal Balance reductions shall be null and void and shall be added back to the balance of the loan.

14. <u>Change in Financial Status.</u> In the event Consumer or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consenter to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator, or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relation to bankruptcy, insolvency, or other relief for debtors, then subject to court approval, Lender shall thereupon be entitled and Consumer irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Landers's requests for such relief. This provision is a material inducement for Lender to enter into this Agreement.

Consumer(s) Initials _____

15. <u>Meaning of Terms</u>. All terms and/or phrases used in this Agreement shall have the respective meanings ascribed to them in the Loan Documents except as otherwise defined herein to the contrary.

16. <u>Conditions</u>. Lender's obligations hereunder and Consumer's ability to enforce this Agreement are subject to and conditioned upon the following: (i) the Deed of Trust has suffered no loss of priority as against other liens or encumbrances recorded against the Property; and (ii) Consumer and any guarantor(s) of the Loan shall have executed and delivered a copy of this Agreement to Lender.

17. <u>Release of Lender.</u> In consideration of Lender's modification of the Loan Documents under this Agreement, Consumer hereby waives and releases Lender from any and all actions, causes of action, claims, damages, demands, liability and loss arising from or relating to the Loan, including, but not limited to, Consumer's original loan applications and the making, funding and administration of such loan.

18. <u>Advice from Financial Advisor</u>. The parties understand that this is a legally binding agreement that may affect such party's rights. Each party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.

19. <u>No Coercion</u>. Consumer acknowledges and represents to Lender that in entering into this Agreement, Consumer has not been subjected to any coercion or any other undue influence, and has exercised Consumer's own free will.

20. <u>Miscellaneous</u>.

  a. <u>Entire Agreement</u>. This Agreement represents the entire integrated agreement between the parties relating to the subject matter of this Agreement. The parties agree that there are no other agreements or understandings, written or oral, express or implied, tacit or otherwise in respect of the subject matter of this Agreement. This Agreement may be amended only in writing.

  b. <u>Attorneys' Fees</u>. If any action is threatened or commenced to interpret or enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs of suit from the other.

  c. <u>Fair Meaning</u>. This Agreement shall be interpreted according to its fair meaning and not for or against any party hereto or the drafter of the agreement. This Agreement has been negotiated between independent counsels separately representing each party to this Agreement.

  d. <u>Cooperation</u>. The parties hereto agree to cooperate with each other to the extent necessary to affect the purposes of this Agreement, including without limitation executing additional documents, providing introductions to other persons and providing copies of books and records.

  e. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement may be executed by facsimile signatures which shall be deemed original signatures for all purposes.

  f. <u>Successors and Assigns</u>. This Agreement shall bind the successors, assigns, heirs, administrators and executrixes of each party hereto.

  g. <u>Sole Parties</u>. This Agreement is made exclusively for the benefit of and solely for the protection of the parties hereto, and no other person or persons shall have the right to enforce the provisions hereof by action or legal proceedings or otherwise.

This agreement has been solely negotiated between the consumer and lender. FCI Lender Services will not be liable for any disputes arising out of this expedited agreement. Each party will hold harmless and indemnify FCI Lender Services for the facilitation of this document.

No changes to the FCI Lender Services system will be made without the signed agreement from the consumer and the majority approval of the lender.

Consumer(s) Initials _____

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the day and year first above written.

LENDER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement.
Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C
By: American Mortgage Investment Partners Management, LLC, as Attorney in Fact

By: _____        6-26-19
     Name: Ron McMahan                                                    Date
     Title:   CEO

CONSUMER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement in the presence of a Notary.

MORTGAGOR'S SIGNATURE AND NOTARY SECTION

_____  6/25/19
Name: Richard Cionci                        Date

Signed, sealed and delivered in the presence of Patricia McMorrow on this: 25 day of June _____, 2019.

Patricia McMorrow
Notary Public

Notary Public for the County of Beaufort State of SC My Commission Expires: 9-24-2028 (Seal)



Consumer(s) Initials _____ RC